### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOAN M. WRIGHT**<br>**on behalf of herself and all**<br>**others similarly situated,** | ) ) ) | |
| | ) | **C.A. No. 09-03538-MMB** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **PHELAN, HALLINAN & SCHMIEG,**<br>**LLP,** | ) ) | |
| | ) | |
| **Defendant** | ) | **Class Action** |

### PLAINTIFF'S MEMORANDUM OF LAW IN
### <u>OPPOSITION TO MOTION TO DISMISS COMPLAINT</u>

This case is about a foreclosure firm that sent a reinstatement demand to a homeowner that was inflated by $3,500, but claims that its actions are not covered by the Fair Debt Collections Practices Act ("FDCPA"). That foreclosure firm is the defendant, Phelan, Hallinan & Schmieg, LLP ("Phelan"), who demanded payment from Joan Wright in the amount of $10,578.58 to get her house out of foreclosure, even though her actual arrears were only about $7,000.

Phelan's exaggerated reinstatement demand is a clear violation of the FDCPA, which prohibits debt collectors from, among other things, misrepresenting the amount of a debt, 15 U.S.C. § 1692e(2)(A), and seeking collection of improper or illegal amounts. 15 U.S.C. § 1692f(1). Phelan does not deny violating the statute. Instead, Phelan moves for dismissal of Ms. Wright's complaint by arguing that the FDCPA violations are not actionable when the consumer is represented by counsel.

1

This argument literally has no textual basis in the FDCPA.  Nowhere does the Act state that violations are not actionable because a debtor is represented by counsel and, in fact, the Supreme Court has held that a law firm's communications to a consumer's lawyer in the course of litigation subjects such collectors to the FDCPA's proscriptions.  *Heintz. v. Jenkins*, 514 U.S. 291 (1995) (collection lawyer's letter to consumer's lawyer allegedly trying to collect improper amount and falsely representing amount of debt was actionable under FDCPA).  The Third Circuit has also held attorneys subject to the Act for steps taken in the course of collection litigation.  *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3d Cir. 2005) (collection law firm subject to FDCPA for attempts to collect improper and excessive attorney fees in the process of collecting municipal water obligations).  *See also, Crossley v. Lieberman*, 868 F.2d 566, 567 (3d Cir.1989) (finding an FDCPA violation where attorney's letter made false representations).

Ms. Wright maintains that there is no exception in the FDCPA to exempt an overreaching debt collector from liability just because a debtor has legal counsel.  The statute provides for liability for both direct communications to a debtor and indirect communications, such as communications to a debtor through a lawyer.  *See* 15 U.S.C. § 1692a(2) (describing covered communications as both direct and indirect).  Alternatively, Ms. Wright contends that any potential exception to liability for represented debtors should not apply to her under the circumstances of this case.  The communication at issue did not merely relate to a matter between lawyers, but was a demand directed from Phelan to Ms. Wright for payment of a grossly exaggerated figure to reinstate Ms. Wright's mortgage.  The figure was more than Ms. Wright could afford, and its communication to her, even through an attorney, provided her with false

information that caused her unnecessarily to experience the fear and anxiety of foreclosure, all things within the ambit of harm the FDCPA is meant to prevent.

## I.    BACKGROUND

Joan Wright owns a home at 3344 Carter Lane, Chester, Pennsylvania, that is subject to a mortgage to the Bank of Oklahoma.  Starting in August, 2008, Ms. Wright fell behind on mortgage payments.  By March of 2009, Ms. Wright had money available to her that she wanted to use to reinstate the mortgage.  Pursuant to the mortgage itself, as well as Pennsylvania law, Ms. Wright had the right to reinstate her mortgage and cure her default by paying to the mortgage holder the total of her missed payments together with the actual and reasonable costs of collection.  41 P.S. § 404.

Ms. Wright inquired about the amount of her arrears with the Bank of Oklahoma, but the bank was not responsive, and referred her to the Phelan firm, which was supposed to be able to tell her the total amount due, including all collection costs.  The Phelan firm was representing the Bank of Oklahoma and had initiated a foreclosure proceeding against Ms. Wright.  Complaint, ¶¶ 6-8.  At about this same time, Ms. Wright sought assistance from Community Impact Legal Services ("CILS").  At CILS, Ms. Wright was helped by a paralegal named Gonnie Hales, who made a request to Phelan for a reinstatement figure.

Based on the number of monthly payments in arrears and the progress of the foreclosure action, Ms. Wright anticipated receiving a total reinstatement amount in the range of $6,500 to $7,500.  Phelan instead sent her a reinstatement demand for $10,578.58.  Complaint, ¶ 9-10.  The demand was sent by fax to the attention of a paralegal at her attorney's office, which is no secret, where it was then passed on to Ms. Wright.  Phelan's demand was excessive because it appeared to improperly include charges for collection costs which Phelan had not yet incurred in the

3

course of the foreclosure.  Complaint, ¶¶ 11-15.  For instance, the demand stated that $2,466.57 was due for Sheriff Costs, but this figure seemingly included a $2,000 Sheriff's deposit that had not yet been paid.  Complaint, ¶¶ 10-11.

After a mortgagee obtains a foreclosure judgment and seeks to have a property scheduled for sale, the mortgagee is required to pay the Sheriff a deposit in the amount of $2,000, which the Sheriff applies to costs such as advertising as the sale progresses.  Complaint, ¶ 11.  In the present case, since the Bank of Oklahoma had not yet obtained a judgment, the Sheriff's deposit could not have been paid, and thus it was improper for Phelan to demand compensation for that sum as a condition for reinstating Ms. Wright's mortgage.

Another figure that appeared suspect was the demand for Attorney's Fees in the amount of $1,550.  Complaint, ¶¶ 10, 12, 14-15.  This figure appeared to represent the total attorney's fee for the entire foreclosure from beginning to end without any pro-ration to account for the fact that the foreclosure was incomplete.  The demand also included an un-itemized sum of $870 identified as "Additional Foreclosure Costs" and $466.57 of unidentified additional Sheriff Costs.  Complaint, ¶ 10.

Ms. Wright did not have the $10,578.58 that Phelan demanded, but she did have $7,500, and on May 19, 2009, Ms. Wright tendered a cashier's check for that amount to Phelan for the reinstatement of her mortgage.  Complaint, ¶ 16.  *There were no prior negotiations or settlement discussions of any kind.*  Phelan received the money and despite its previous demand for $10,578.58, Phelan, or its client the Bank of Oklahoma, apparently realized that $7,500 was sufficient to reinstate Ms. Wright's mortgage, and proceeded accordingly.  Phelan unilaterally withdrew the foreclosure action.  *Id.*  On June 16 2009, Ms. Wright received a check from the Bank of Oklahoma for $437.12, labeled surplus reinstatement funds, illustrating that even the

$7,500 tender was more than was actually required to reinstate Ms. Wright's mortgage. Complaint, ¶ 17.

The Complaint in this case alleges that Phelan violated the FDCPA in a number of ways, including, but not limited to, misrepresenting to Ms. Wright the amount she had to pay to reinstate her mortgage. Complaint ¶¶ 29-36. The Complaint also sets forth counts for Money Had and Received and for Unjust Enrichment. Complaint, ¶¶ 37-45. The Complaint alleges that Phelan systematically demands inflated reinstatement figures from homeowners, and as a matter of general practice, demands payment of fees and costs that are unreasonable, not provided for by the parties' agreement, not actually incurred and not permitted by law.

## II.    ARGUMENT

### A.    Standard Of Review: A Well Pled Complaint Need Only Allege Claims That Are Not "Speculative" To Defeat A Motion To Dismiss Pursuant To Rule 12(b)(6).

Universally recognized as a notice pleading standard, Rule 8(a)(2) of the Federal Rules of Civil Procedure calls for a plaintiff filing a complaint in the federal courts to simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). *See also, Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (calling Rule 8 a "simplified notice pleading standard.")

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "[T]he threshold level to be met by a plaintiff to withstand a motion to dismiss is very low." *Smith v. Weeks*, 2002 WL 31750203, *5 (E.D. Pa. Dec. 9, 2002).

The Third Circuit after *Twombly* has consistently held that when considering a motion to dismiss pursuant to Rule 12(b)(6), the court shall:

> 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff' and 'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'

*Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008), (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), and *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)). *See also, Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (finding *Pinker* "remains an acceptable statement of the standard" and "finding [*Twombly*] confusing"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. at 236).

To the extent *Twombly*, or more recently *Ashcroft v. Iqbal*, 129 S.Ct. 937 (2009), impacts the standard of review of a Rule 12(b)(6) motion, the opinion merely clarifies that a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Third Circuit in *Phillips* noted that *Twombly* "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

## B.    The FDCPA

"Congress enacted the FDCPA in 1977 after noting the 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(a)).  To

enhance the protections available to consumers, the FDCPA provides "a private cause of action against debt collectors who fail to comply with the Act. . . . A prevailing plaintiff under the Act is entitled to an award of damages, costs of suit and reasonable attorneys' fees." *Id.* (quoting 15 U.S.C. § 1692k.)

As a remedial statute, the FDCPA's language is construed broadly. *Id.*; *Clark v. Capital Credit & Collections Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006)("[w]e are convinced that this reading of the FDCPA is more in harmony with the remedial nature of the statute, which requires us to interpret it liberally;" holding collection agency and its lawyer strictly liable for falsely stating amount of debt). *See also, Womack v. National Action Financial Services*, 2007 WL 2155669, *3 (E.D. Pa. July 25, 2007) (Baylson, J.) (discussing this Circuit's FDCPA jurisprudence). In analyzing communications that potentially give rise to claims under the FDCPA, the "least sophisticated consumer" standard applies. The Third Circuit has emphasized that the least sophisticated consumer test applies equally to protect the shrewd and naive alike. *Brown v. Card Service Center*, 464 F.3d at 453. This lower standard comports with a basic purpose of the FDCPA "to protect 'all consumers, the gullible as well as the shrewd,' 'the trusting as well as the suspicious' from abusive debt collection practices." *Id.* at 454.

The FDCPA is a strict liability statute. *See, e.g., Ross v. RJM Acquisitions Funding, LLC*, 480 F.3d 493 (7th Cir. 2007). As a result, a consumer need not have suffered actual damages to avail herself of the remedies under the Act, which provides for statutory damages of up to $1,000 per consumer, and in a class action, $500,000 or one percent (1%) of a debt collector's net worth, whichever is less. 15 U.S.C. § 1692k(a)(2)(B).

A debt collector is responsible for its deviations from the FDCPA's requirements without regard to intent or knowledge or the willfulness of the violation. *Id.* The rationale supporting strict liability was aptly described as follows:

> [I]n the general context of consumer protection – of which the Fair Debt Collection Practices Act is a part – "it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'"

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (citations omitted).

**C.    There Is No Exception For Liability Under The FDCPA For Misrepresentations To A Debtor Who Is Represented By Counsel.**

There is little doubt that Phelan's inflated reinstatement demand to Ms. Wright violates the substantive provisions of the FDCPA which prohibit, among other things, false representation of the amount of a debt and attempts to collect amounts not permitted by contract or by law. 15 U.S.C. §§ 1692e(a)(2), 1692f(1). Phelan claims nevertheless not to be liable for the violation based on the fact that Ms. Wright was represented by counsel. As the Supreme Court held in *Heintz v. Jenkins, supra,* there is no exception to liability under the FDCPA for debtors who are represented by counsel. Phelan is in effect asking this Court to ignore Supreme Court precedent and legislate from the bench to engraft a new provision on the FDCPA that eliminates liability for debtors who have attorneys. Absent a basis in the statute, Phelan's request is improper.

Section 1692k of the FDCPA is the operative provision on liability, and states:

> ***Except as otherwise provided by this section***, any debt collector who fails to comply with any provision of this title [15 USCS §§ 1692 *et seq.*] with respect to any person is liable to such person in an amount equal to the sum of . . . .

15 U.S.C. § 1692k (emphasis added). The section contains two exceptions. The first exception is for *bono fide* errors, described as errors that are unintentional and occur despite the existence

8

of procedures to guard against them. *Id.* § 1692k(c). The second exception is for debt collectors who have acted in reliance on advisory opinions by the Federal Trade Commission. *Id.* § 1692k(e). There is no exception for communications to a consumer's attorney.

The substantive provisions of the Act applicable in the present case include sections 1692e and 1692f. Section 1692e prohibits debt collectors from using "***any*** false, deceptive, or misleading ***representation*** or ***means*** in connection with the collection of any debt." *Id.* § 1692e (emphasis added). The reference to "any" "representation" or "means" is certainly broad enough language to encompass the inflated reinstatement demand Phelan issued for Ms. Wright and sent to her counsel. The section then contains a list of prohibited acts prefaced by the admonition they are not to be construed as limiting. *Id.* One specifically prohibited act is the false representation of the character, amount or legal status of any debt. *Id.* § 1692e(2)(A). Another specifically prohibited act is "[c]ommunicating or threatening to communicate to ***any person*** credit information which is known or which should be known to be false" *Id.* § 1692e(8) (emphasis added). This subsection specifically prohibited Phelan from providing false credit information to "any person" in connection with Ms. Wright, which includes on its face Phelan's communication of a false reinstatement figure to Ms. Wright's counsel.

Section 1692f instructs that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f, and contains a list of specific examples, again prefaced with the warning that the examples are not to be construed as limiting. Phelan's request to Ms. Wright to pay $3,500 more than she actually owed to get her house out of foreclosure was not permitted by contract or by law, in violation of section 1692f(1). Several subsections expressly concern third parties, including section 1692f(5) which forbids "[c]ausing charges to be made to ***any person*** for communications," *id.* (emphasis added), including collect

9

telephone calls, and sections 1692f(7) and (8) which prohibit communicating by post card or by a letter that states on the envelope it is from a debt collector.  *Id.* § 1692f(7), (8).

The word "communication" is a term of art under the FDCPA defined as "the conveying of information regarding a debt directly or ***indirectly*** to ***any person*** through any medium."  *Id.* § 1692a(2) (emphasis added).  This is a broad definition that easily includes faxing an inflated reinstatement figure to Ms. Wright's counsel.  Phelan's fax to Ms. Wright's attorney was an "indirect" communication to her through "any medium."

Section 1692c deals with communications specifically.  It restricts debt collectors from communicating with consumers at inconvenient times or places or when a consumer is at work.  *Id.* § 1692c(a).  The section limits the parties with whom a debt collector can communicate to the consumer, the consumer's attorney, a consumer reporting agency, the creditor, an attorney of the creditor, or an attorney of the debt collector.  *Id.* § 1692c(b).  The section specifically mentions consumers represented by counsel and instructs that a debt collector must direct all communications to a debtor's attorney if the debtor is known to be represented.  Section 1692c also contains an expanded definition of the term "consumer" applicable only in that section.  The Act generally uses the term "consumer" to refer to a person who owes a debt, *id.* § 1692a(3), but in this section the term is expanded to include a spouse, parent (if the consumer is a minor), guardian, executor, or administrator.  *Id.* § 1692c(d).  What this expanded definition means is that debt collectors are allowed to contact all of these people as if they were the consumer, but people within this group are then protected by the statute from being contracted at unreasonable places and times such as at work.  *Wenrich v. Robert E. Cole, P.C.*, 2001 WL 4994, *3-4 (E.D. Pa. Dec. 22, 2000) (Padova, J.).  Attorneys are not included within this expanded definition of consumer because it would not make sense, for instance, for debt collectors to be prohibited from

contacting attorneys at work (since speaking to the debt collector would be part of the attorney's job). This section would be the next most likely location in the FDCPA after section 1692k for Congress to have inserted a provision excepting liability for consumers who are represented by counsel, but no such exception was enacted.

Despite the absence of any exception for represented consumers, there are courts which have nonetheless written such an exception into the statute. Phelan relies on *Guerrero v. RJM Acquisitions, LLC.*, 499 F.3d 926 (9th Cir. 2007), in which the court held that communications directed only to a debtor's attorney are not actionable. *Id.* at 936. The court based that conclusion on two grounds. The first was that the FDCPA differentiates between consumers and attorneys, particularly in section 1692c where debt collectors are directed to communicate only with a debtor's attorney if the collector knows a consumer is represented. The court inferred from this section that Congress recognized attorneys as "legally distinct entities" from consumers so that communications with attorneys could be subject to different treatment. *Id.* at 935. The court took particular note of the fact that attorneys are not listed within the expanded definition of "consumer" applicable only in section 1692c and took that to mean communications with attorneys were subject to less protection than communications with consumers.

> Section 1692c(d) . . . thus defines "consumer" broadly to include a range of the debtor's relatives and fiduciaries. The conspicuous absence of the debtor's attorney from that otherwise extensive list is telling. It suggests that in approaching the debt collection problem, Congress did not view attorneys as susceptible to the abuses that spurred the need for the legislation to begin with, and that Congress built that differentiation into the statute itself.

*Guerrero*, 499 F.3d at 935.

The second ground for the court's decision was its interpretation of the purpose of the FDCPA as being for the protection of consumers. The court observed that the purpose of

protecting consumers was not furthered by basing liability on communications with attorneys who the court characterized as being able to bear the brunt of a debt collector's overreaching behavior.

Respectfully, Ms. Wright submits that *Guerrero's* reasoning is flawed. The court's reliance on the exclusion of attorneys from the definition of "consumer" in section 1692c is misplaced. Section 1692c identifies a group of people who a debt collector is not allowed to call at inconvenient times and places, such as at work. The exclusion of attorneys from that definition simply means that a debt collector has permission to call a debtor's attorney at his place of business. While it might make sense to prohibit a debt collector from calling a consumer at work, it is illogical to apply the same limitation to communications with a debtor's attorney since dealing with a debt collector is part of an attorney's job. Any limitation on the ability of a debt collector to contact an attorney at work would contradict section 1692c(a)(2) that requires debt collectors to speak to counsel. It does not follow that because a debt collector is permitted to call a consumer's attorney at work that the collector is then relieved of prohibitions in other sections of the FDCPA regarding deceptive, misleading, unfair or unconscionable communications. In fact, the definition of "communication" as the conveying of information about a debt to "any person" "directly" or "indirectly" continues to apply to all of the debt collector's conversations and messages to the debtor's attorney.

Although it is true the purpose of the Act is to protect unsophisticated consumers against sneaky and overly aggressive debt collectors, that does not mean Congress intended communications with a debtor's attorney to go unregulated. Even if attorneys are less likely to be taken advantage of, it is absurd to conclude that Congress was actually content to allow dishonest, fraudulent or deceptive conduct to be directed toward them. Stated simply, consumers

will be disadvantaged, contrary to Congressional intent, if it is legal for debt collectors to lie, deceive and misrepresent to their attorneys.

The Fourth Circuit considered the same question in *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007), and came to the opposite conclusion from *Guerrero*. Relying on the definition of "communication" under the FDCPA as including both the direct and indirect transference of information, the court held that a "communication to a debtor's counsel, regarding a debt collection lawsuit . . . plainly qualifies as an indirect communication to the debtor." *Id.* at 232. The court pointed out that section 1692c(a)(2) specifically uses the term "communication" in connection with contact by a debt collector with a debtor's attorney, showing that such contacts were intended to be regulated.

In *Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769 (7th Cir. 2007), the court also held that communications with a debtor's attorney were actionable. The court relied on the broad definition of "communication" under the Act, 15 U.S.C. § 1692a(2), to hold that a message to a debtor's attorney that is shared with the client constitutes an indirect communication to the consumer. "The lawyer is both 'any person' and 'any medium.'" *Id.* at 773. Referring to sections 1692d, e, and f, the court observed "[t]hese section do not designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity." *Id.*

> It is true that a lawyer is less likely to be deceived, intimidated, harassed, and so forth (for simplicity, we shall assume that only deception is alleged) than a consumer. But that is an argument not for immunizing practices forbidden by the statute when they are directed against a consumer's lawyer, but rather for recognizing that the standard for determining whether particular conduct violates the statute is different when the conduct is aimed at a lawyer than when it is aimed at a consumer.

*Id.* at 774. The court reasoned that the standard for determining liability for a communication sent to an attorney should be whether it would mislead a reasonably competent attorney who was not an expert in consumer law. In discussing the application of this standard, the court noted that a misrepresentation of the amount of a consumer's debt in a dunning letter might be equally deceptive to an attorney and a consumer because the underlying information needed to verify the amount of the debt would likely be in the creditor's control. *Id.* at 775. *Accord Dikeman v. National Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996) (no liability for debt collector's failure to disclose warning to attorney that attorney already knew by virtue of his professional training). *See also Sparks v. Phillips & Cohen Associates, LTD.*, 2008 U.S. Dist. LEXIS 47915, *36-39 n.21 (N.D. Ala. 2008) ("a debt collector cannot circumvent liability by accomplishing indirectly that which it cannot do directly"); *Massa v. I.C. System, Inc.*, 2008 WL 504329 (S.D. In. Feb. 21, 2008) (false representation of amount of debt to attorney was actionable under the FDCPA); *Capital Credit & Collections Services, Inc., v. Armani,* 227 Ore. App. 574, 206 P.3d 1114 (2008) ("[w]e conclude that *Sayyed* and *Evory* are better reasoned and that a false, deceptive or misleading representation or means in connection with the collection of any debt under Section 1692e of the Act includes communications by the debt collector to the debtor's attorney") (internal quotations omitted).

As mentioned above, Phelan's position is directly contrary to the Supreme Court's decision in *Heintz v. Jenkins, supra.* In *Heintz*, the Court ruled that the FDCPA applied to a letter written by a collection attorney to a debtor's attorney that was alleged to misstate the amount of the debtor's liability on a consumer debt. The Court phrased the issue before it as whether the FDCPA applied to a lawyer who regularly collects consumer debts through litigation, and thus the focus of the Court's decision was on the lawyer doing the debt collecting

rather than the lawyer representing the consumer, but the Court nevertheless found that a letter written to an attorney was actionable for misstating the amount of a consumer's debt.  The courts in *Sayyed*, 485 F.3d at 233, and *Armani*, 227 Ore. App. at 585, 206 P.3d at 1121, both relied on *Heintz* in ruling that a communication to an attorney was actionable.

The Complaint in the present case alleges that Phelan made a demand upon Ms. Wright for payment of $10,578.58  to reinstate her mortgage.  Phelan overstated the amount of Ms. Wright's arrears by about $3,500, rendering the demand violative of sections 1692e(2)(A), (8) and 1692f.  There is no dispute factually that the demand was excessive because Ms. Wright tendered only $7,500 to Phelan which was then accepted to accomplish a complete reinstatement of Ms. Wright's mortgage.  Contrary to Phelan's suggestion in its brief, there was no negotiation, settlement or compromise of Ms. Wright's arrearage, and certainly there is no reference to any negotiation in the complaint.  There was no communication of any sort in which Phelan indicated that a tender of $7,500 was acceptable to cure Ms. Wright's default.

Phelan's fax of the excessive reinstatement demand to Ms. Wright's counsel was an indirect "communication" to Ms. Wright within the broad definition of that term in section 1692a(2).  The Complaint more than adequately alleges the various ways in which this communication violated the FDCPA.

Phelan claims it should have immunity for communicating a false reinstatement amount to Ms. Wright because it was sent to her attorney, but there is no provision in the FDCPA that grants such immunity.  Recognition of any such immunity would be an improper act of judicial legislation.  If the collection industry wants an exception for fraudulent communications to a debtor's counsel, it should lobby Congress for an amendment to the statute, not the court.

**D.    Immunizing Phelan From Liability In This Instance Would Be Contrary To The Intent Of The FDCPA**

Even if it might be appropriate in some instances to recognize an exception for communications with an attorney, the application of such an exception is not appropriate in the present case. The Ninth Circuit in *Guerrero*, 499 F.3d at 935, actually recognized a much narrower exception than is being advocated by Phelan. The plaintiff in *Guerrero* received a letter from a debt collector and went to an attorney. The attorney then wrote to the debt collector asserting that it violated the FDCPA, requested payment of damages and denied the validity of the obligation. *Id.* at 930. The attorney requested the debt collector respond to his letter within ten days or face litigation. *Id.* The debt collector responded as requested with a letter faxed to the attorney dated June 14, 2002. *Id.* at 931. In that fax, the debt collector denied any violation of the statute, explained that it had acquired the debt from a prior creditor, restated the amount due, and requested the attorney contact the debt collector to discuss the matter. *Id.* Since the debt collector had acquired ownership of the debt itself, it took the position in the fax, incorrectly, that it was not subject to the FDCPA.

Several months later, the consumer filed a law suit against the debt collector for violating the FDCPA. The suit alleged, among other things, that the fax was a violation of the FDCPA because it represented a continuation of collection efforts prior to validation of the debt and contained misrepresentations. *Id.* at 936. The court expressed displeasure with the plaintiff's attorney's hardball tactics by alleging that the fax was a continuation of collection activity when it was sent based on the lawyer's request for a response in ten days. The court held that the fax could not be the subject of a suit under the FDCPA since it was a "communication[] directed *only* to the debtor's attorney . . . ." *Id.* at 936 (emphasis added).

16

The reinstatement demand at issue in the present case is quite different. Phelan may have faxed the reinstatement demand to Ms. Wright's counsel, but it was *directed* to Ms. Wright. The arrears on Ms. Wright's mortgage were solely her responsibility, and the demand purported to inform Ms. Wright of the amount *she* had to pay. The substantive content of the fax at issue in *Guerrero* was the debt collector's legal analysis that it was not subject to the FDCPA because it was the owner of the debt. There was no indication that the content of the fax was ever communicated to the consumer, and it is unlikely it would have mattered to the consumer if it had been. The legal niceties of whether a particular entity is subject to the FDCPA are matters of unique interest to lawyers, not their clients. As applied to the fax in that case, *Guerrero* is largely correct that the policy of the FDCPA is not offended by an attorney's receipt of a letter containing a flawed legal analysis that was not subsequently communicated to the client, and related to a technical matter that would likely be immaterial to the client's concerns. *Guerrero* did not involve a communication of false credit information to "any person" as is specifically prohibited by section 1692e(8) of the Act.

Phelan relies heavily upon two local cases, *Duraney v. Washington Mutual Bank,* 2008 WL 4204821 (W.D. Pa. Sept. 11, 2008), and *Marshall v. Portfolio Recovery Associates, Inc.,* 2009 WL 2476627 (E.D. Pa. Aug. 12, 2009), but both of these cases are easily distinguishable. The plaintiff in *Duraney* was unable to pay her mortgage company's legitimate reinstatement demand and ended up losing her house following a contested foreclosure proceeding. In a subsequent case in federal court for violating the FDCPA, the plaintiff alleged that the mortgage company had sent an inaccurate reinstatement demand to her attorney in the course of the prior foreclosure. The plaintiff argued that the demand was deceptive not because it was miscalculated but because the mortgage company sought fees and costs to which it was not

17

entitled based on the legal argument that the mortgage company sent the plaintiff a defective Act 91 notice.[1]  By the time the district court considered this argument in the FDCPA case, the common pleas court had already upheld the validity of the Act 91 notice in the foreclosure case, meaning that the mortgagee's demand for payment of fees and costs was permissible and not deceptive.  The federal court did not need to analyze the matter further, but did, and held in *dicta* that communications to a consumer's attorney were not actionable, endorsing the majority decision in *Guerrero*.  Because the reinstatement figure was accurate, there was no violation of the FDCPA on the merits.

The *Marshall* case is unique in that it involved a claim by an attorney, **not** a consumer, against a debt collector.  The attorney filed a complaint as a result of receiving an unpleasant call from a debt collector, presumably about one of the attorney's clients.  The attorney alleged that the debt collector deceptively withheld her identity and was rude, causing the attorney to hang up on her.  The court discounted the claim of deception since the attorney cut off the conversation before the caller had a chance to finish.  The court cited the *Duraney* case with approval, but ultimately analyzed attorney Marshall's claim under the competent lawyer standard announced in *Evory*, 505 F.3d at 769, concluding there was nothing about the call that should have deceived a lawyer.  *Marshall*, 2009 WL 2476627 at *4.   The violations of the FDCPA asserted by Ms. Wright in this case were not at issue in *Marshall*.

---

[1]    An Act 91 notice is a disclosure that a mortgagee is required to send a homeowner under Pennsylvania law. Emergency Mortgage Assistance Act, 35 Pa. Cons. Stat. § 1680.401c *et seq.*  The Act 91 notice gives homeowners notice of their rights, including the right to apply to the state for assistance, and is considered a jurisdictional prerequisite to filing a foreclosure.  A mortgagee's failure to send an accurate Act 91 notice is a defense to a foreclosure and a basis for disputing the mortgagee's right to collect fees and costs.

Another case upon which Phelan relies is the Second Circuit's decision in *Kropelnicki v. Seigel*, 290 F.3d 118 (2d Cir. 2002). The FDCPA claim there was dismissed under the *Rooker-Feldman* doctrine, but not before the court discussed the merits of the claim in *dicta*. The claim grew out of an allegation by one attorney that he was misled by another attorney. The attorney representing the debtor averred that he was led to believe that the collection attorney would not take a default judgment against the debtor without prior notice. The collection attorney took the default judgment anyway. The alleged misrepresentation was thus directed solely toward the lawyer, and not the debtor, and there was no indication that it was ever even communicated to the debtor. The court commented that "alleged misrepresentations to attorneys," *id.* at 127, should not give rise to FDCPA claims, although the court also noted that "this [was] not an issue on which we need to rule today." *Id.* at 127. *Kropelnicki* is distinguishable from the present case on the same basis as *Guerrero* in that the alleged misrepresentation was directed solely to the attorney, with no indication that it was ever communicated to the debtor client. The representation also did not involve a false representation of credit information which the Act expressly forbids a debt collector from disclosing to "any person." 11 U.S.C. §1692e(8).

The policy behind the FDCPA will be thwarted if the Phelan firm is immunized against liability for demanding a false and inflated reinstatement figure from Ms. Wright just because the demand was faxed to her attorney. There is a difference between to whom a communication is sent, and to whom it is directed. Phelan may have sent the reinstatement demand to Ms. Wright's counsel, but the demand was directed to Ms. Wright because she was the person who had to make payment. The intent of the FDCPA is that Ms. Wright receive an accurate and honest statement of the amount of her arrears, and that intent was not met. Instead, Phelan's demand for an amount in excess of the amount permitted by contract or by law, let alone beyond

19

Ms. Wright's ability to pay, unnecessarily put her in fear of losing her home and caused her to have to guess at the correct amount to pay. These are the very harms the FDCPA was meant to eliminate.

Unlike the cases cited by Phelan, the present case also involves a violation of section 1692e(8), which expressly prohibits Phelan from sending false credit information about Ms. Wright to "any person." The erroneous statement of Ms. Wright's arrears on her mortgage constituted false credit information, and Ms. Wright's counsel certainly falls into the broad category of being "any person." Even if the Court could have doubt regarding the overall intent of the FDCPA, this is an instance in which consideration of intent must yield to the plain meaning of the statute.

**E.    Alternatively, Phelan Is Liable For Its Improper Reinstatement Demand Under The Competent Lawyer Standard.**

Phelan argues in the alternative that it would not be liable for a violation of the FDCPA if its reinstatement demand were judged under the reasonably competent lawyer standard adopted by the Seventh Circuit in *Evory v. RJM Acquisitions Funding, L.L.C, supra.* Phelan's argument must fail, however, because a reasonably competent lawyer who was ***not*** experienced in defending foreclosures would not have been able to tell that the demand sent to Ms. Wright was false.

As an initial matter, the Plaintiff would point out that the only standard the Third Circuit has ever applied to measure the falsity or deceptiveness of a debt collector's communications is the least sophisticated consumer test. *Brown v. Card Service Center,* 464 F.3d at 453, discussed *supra.* The application of a more lenient standard for attorneys is thus contrary to established Third Circuit precedent.

In any event, Phelan misstates the standard that was adopted by the Seventh Circuit. Phelan argues that an experienced consumer lawyer would have known that Phelan's demand was false, but the Seventh Circuit envisioned a lawyer who was not a specialist. "[W]e conclude that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is ***not*** a specialist in consumer debt law should be actionable." *Evory,* 505 F.3d at 775 (emphasis added). The court continued its analysis and observed that some false representations, including in particular a false statement of the amount of a debt, could be as difficult for an attorney to spot as a consumer. *Id.*

Ms. Wright submits that a competent lawyer who was not well versed in defending foreclosures would have had no idea the amount demanded by Phelan was false. The average personal injury, wills and estates, or patent lawyer, for instance, would have had no basis for knowing which charges in Phelan's demand were proper or improper and would not have been able to become knowledgeable simply by doing legal research. The lawyer would need specific experience handling foreclosures, and even then the lawyer might not understand all of the charges in Phelan's demand.

Even if a different standard applies to communications sent to a debtor's attorney, which is not supported by Third Circuit precedent, a reasonably competent lawyer would still have been deceived by Phelan's demand and misled into believing that Ms. Wright had to pay $10,578.58 to get her house out of foreclosure.

## III.    <u>CONCLUSION</u>

For all the reasons discussed above, Plaintiff Joan Wright respectfully requests that the Defendant's Motion to Dismiss Complaint be denied and that Defendant be ordered to answer the Complaint within ten (10) days.


Date: September 14, 2009                    Respectfully submitted**,**


                                            */s/Robert F. Salvin*
                                            ROBERT F. SALVIN, ESQUIRE
                                            **COMMUNITY IMPACT LEGAL
                                            SERVICES, INC.**
                                            419 Ave. of the States, Suite 201
                                            Chester, PA  19013
                                            610-876-0804

                                            **DONOVAN SEARLES, LLC**
                                            DAVID A. SEARLES, ESQUIRE
                                            1845 Walnut Street, Suite 1100
                                            Philadelphia, PA  19103
                                            (215) 732-6067


                                            Attorneys for Plaintiff and the Class