IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN M. WRIGHT : | |
| on behalf of herself and : | CIVIL ACTION |
| all others similarly situated : | |
| : | NO. 09-3538 |
| v. : | |
| : | |
| PHELAN, HALLINAN & SCHMIEG, LLP : | |

**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                                                                                                                    **March 8, 2010**

Before the Court is the Motion to Dismiss of defendant Phelan, Hallinan & Schmieg, LLP. (Doc. 4). Plaintiff, Joan M. Wright, has brought suit against defendant on behalf of herself and all others similarly situated, alleging that defendant, a firm that engages in debt collection, has violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 <u>et seq.</u> Defendant contends plaintiff has failed to state a claim upon which relief can be granted. For the reasons that follow, the Court will grant defendant's Motion to Dismiss.

**I.**       **Facts and Procedural History**[1]

---

[1]"In evaluating a [motion to dismiss under Fed. R. Civ. P. 12(b)(6)], a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents." <u>Ogbin v. Fein, Such, Kahn & Shepard, PC</u>, Civ. A. No. 08-4138, 2009 WL 1587896, at *1 (D.N.J. June 1, 2009) (Cavanaugh, J.) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)). Matters of public record, in this context, have been understood to include "copies of pleadings and other materials filed in other courts." <u>Caldwell Trucking PRP Group v. Spaulding Composites Co.</u>, 890 F. Supp. 1247, 1252 (D.N.J. 1995) (Bassler, J.); <u>see, e.g.</u>, <u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.</u>, 458 F.3d 244, 256 n.5 (3d Cir. 2006) (finding consideration of the pleadings and opinion from prior proceedings did not require the district court to convert the defendant's motion to dismiss into one for summary judgment because, "to resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint" (internal quotation marks and alteration marks omitted)); <u>Pekar v. U.S. Steel/Edgar Thomson Works</u>, Civ. A. No. 09-844, 2010

Plaintiff owns a home at 3344 Carter Lane, Chester, Pennsylvania, that is subject to a mortgage to the Bank of Oklahoma. (Compl. ¶¶ 4, 6). Defendant was hired by the Bank of Oklahoma to collect on an alleged debt for overdue payments on the mortgage, and on December 16, 2008, defendant filed a complaint in mortgage foreclosure against plaintiff in the Court of Common Pleas of Delaware County. (Compl. ¶¶ 6, 8). Upon request, defendant faxed a three-page letter to the office of plaintiff's attorney—Robert F. Salvin, Esquire, of Community Impact Legal Services, Inc.—on May 13, 2009, regarding the "Reinstatement Figure" necessary to reinstate plaintiff's mortgage. (Compl. Ex. A).[2] The first page of this letter stated, in part:

> May 13, 2009
> **Via Fax**
> **Gonnie Hales**

---

WL 419421, at *4 (W.D. Pa. Jan. 29, 2010) (Fischer, J.) ("[I]n evaluating a Rule 12(b)(6) motion, a court may look beyond the complaint to matters of public record, including court files and records . . . ." (internal quotation marks omitted)); Durant v. Horton, Civ. A. No. 07-93, 2008 WL 2510661, at *3 n.1 (D.N.J. June 19, 2008) (Greenaway, J.) ("[D]ocuments contained in the record in other court proceedings have been construed as matters of public record."). Accordingly, the Court has derived the facts controlling its analysis of defendant's Motion to Dismiss from plaintiff's Complaint and the exhibit attached to that Complaint, as well as the pleadings and docket sheet from the previous foreclosure action brought by defendant against plaintiff, copies of which were attached to defendant's Motion as Exhibits B–D.

[2]Plaintiff alleges in the Complaint that "[b]y letter dated May 13, 2009, Defendant made demand upon Plaintiff for payment of the sum of $10,570.88 [sic] as a 'reinstatement figure' allegedly required to bring the mortgage current." (Compl. ¶ 9). This allegation does not mention that the letter was faxed to Salvin's office. As plaintiff states in her Response to defendant's Motion to Dismiss, however, it is "no secret" that "[t]he demand was sent by fax to the attention of a paralegal at her attorney's office" (Pl.'s Response 3): the letter itself was directed to a certain fax number (Compl. Ex. A), and the answer filed by Salvin on plaintiff's behalf in the foreclosure action confirms that this fax number was his. (Def.'s Motion to Dismiss Ex. D). Cf. Smith v. Litton Loan Servicing, LP, Civ. A. No. 04-02846, 2005 WL 289927, at *5 (E.D. Pa. Feb. 4, 2005) (Pratter, J.) ("[I]f facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss." (citing 5A Wright & Miller, Federal Practice and Procedure, § 1364 (2004))).

2

> **[fax number of Salvin's office]**
>
> *Re:* **Wright, Joan M.**
> **3344 Carter Lane, Chester PA 19103**
> **Acct#: []**
>
> To Whom It May Concern:
>
> In accordance with your recent request, please find a **reinstatement figure** in the amount of **$10,570.58**, which is the amount required to bring the above account current with **BOK Mortgage**. Funds must be received in our office no later then [sic] **5/29/09** to allow for processing and mailing to our client.

(Compl. Ex. A). The letter then provided various details regarding payment. On the second page of the letter, the Reinstatement Figure was itemized as follows:

> | | |
> |---|---:|
> | Payments Due | $5,198.88 |
> | Late Charges | $207.90 |
> | Credit | -$2.82 |
> | | |
> | Prothonotary of Delaware County Costs | $280.25 |
> | Sheriff of Delaware County Costs | $2,466.57 |
> | Additional Foreclosure Costs | $870.00 |
> | Attorney Fee | $1,550.00 |
> | | |
> | **TOTAL** | **$10,570.58** |

(Compl. Ex. A). The third page of the letter was a form to be submitted along with payment, requesting information such as the name on the mortgage, the loan number, and so forth. At the bottom of all three pages of the letter, in smaller print, was the following language:

> Please be advised that this firm is a debt collector attempting to collect a debt. Any information received will be used for that purpose. If you have received a discharge in bankruptcy, and this debt was not reaffirmed, this correspondence is not and should not be construed to be an attempt to collect a debt, but only enforcement of a lien against property.

> As of the date of this communication, you owe the amount specified. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call [] and ask for the Reinstatement Department.

(Compl. Ex. A).

On May 14, 2009, one day after receipt of this letter, plaintiff filed an answer to defendant's complaint in the state-court foreclosure action, asserting, inter alia, that she "has the funds to reinstate the mortgage, and she will try to tender the funds, but [defendant] has sent [her] an inflated an [sic] inaccurate reinstatement demand, and thus her tender may very well be rejected." (Def.'s Mot. to Dismiss, Ex. D ¶ 5). Namely, plaintiff claimed that defendant's Reinstatement Figure "contains collection costs and fees that plaintiff has not yet incurred, such as fees for a sheriff's deposit even though plaintiff does not yet have a judgment and cannot yet schedule the property for a sheriff's sale." (Def.'s Mot. to Dismiss, Ex. D ¶ 13). On May 19, 2009, plaintiff tendered a cashier's check for $7,500 to defendant for the reinstatement of her mortgage. (Compl. ¶ 16). This payment was accepted, plaintiff's mortgage was reinstated, and the foreclosure action was dismissed. (Compl. ¶ 16). Subsequently, plaintiff received a check from the Bank of Oklahoma in the amount of $437.12, to refund her for the surplus of reinstatement funds she had tendered. (Compl. ¶ 17).

On August 4, 2009, plaintiff commenced the present action against defendant, bringing suit both individually and on behalf of others similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Plaintiff raised three claims in her Complaint (Doc. 1): one federal-law claim for violations of the FDCPA; and two state-law claims, for Money Had and Received, and for Unjust

4

Enrichment / Accounting / Disgorgement / Restitution. According to plaintiff, "there was no basis in law or in contract for Defendant to demand and collect a sum of $2,466.57 in Sheriff of Delaware County costs[,] . . . $870 for 'Additional Foreclosure Costs,'" or "an attorney fee of $1,550.00," and "Defendant did not state in the letter or the enclosure that the amounts demanded were in excess of the amount actually owed at the time of the demand." (Compl. ¶¶ 11–13). Thus, plaintiff alleged, "Defendant acted in a false, deceptive, misleading and unfair manner by attempting to collect Sheriff costs and attorneys fees and other charges not expressly authorized by the agreement creating the debt or permitted by law, and threatening to take action that legally cannot be taken, for the purpose of coercing Plaintiff to pay the debt." (Compl. ¶ 14). With respect to her class-action allegations, plaintiff proposed three classes: a "Sheriff Costs Overcharge Class," an "Attorney Fee Overcharge Class," and a "Miscellaneous Overcharge Class." (Compl. ¶ 21).

On August 28, 2009, defendant filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), which is presently before the Court. (Doc. 4). On September 4, 2009, plaintiff filed its Response in Opposition to the Motion. (Doc. 6)

## II. The Parties' Contentions

In its Motion to Dismiss, defendant does not contest that the Reinstatement Figure presented in its May 13, 2009 letter was inaccurate. Defendant contends, however, that plaintiff has failed to state a claim under the FDCPA because the letter in question was faxed from defendant to the office of plaintiff's counsel, and "an FDCPA claim may not be based on upon an allegedly deceptive communication <u>sent to a consumer's attorney</u>." (Def.'s Mot. to Dismiss 6). According to defendant, "because the communication at issue was between attorneys and <u>not</u> the

consumer, the Complaint . . . is fatally deficient on its face." (Def.'s Mot. to Dismiss 4). Defendant points to caselaw from the Ninth and Second Circuits, as well as from various district courts including those in the Eastern and Western Districts of Pennsylvania, in support of this position. Defendant further contends that, even if communications with a consumer's attorney are actionable under the FDCPA, they should be measured under the "competent lawyer" standard set forth by the Seventh Circuit in <u>Evory v. RJM Acquisitions Funding L.L.C.</u>, 505 F.3d 769 (7th Cir. 2007). As demonstrated by Salvin's quick identification of and response to the inaccuracy in the Reinstatement Figure, defendant argues, "[t]here was no deception as a matter of law and, even were this court to apply the 'reasonably competent lawyer" standard, . . . this Complaint must be dismissed." (Def.'s Mot. to Dismiss 9). Additionally, defendant points to the language that appeared at the bottom of all three pages of the letter, which states that the amount listed in the letter may not be the amount actually owed, and argues that this "safe harbor language" also provides ground for dismissal of plaintiff's claim. (Def.'s Mot. to Dismiss 9–10). Lastly, defendant contends that, "[b]ecause there is no substantial Federal claim and jurisdiction lies in this court only under Federal Question Jurisdiction . . . , this court should not retain jurisdiction over the two state law claims for monies had and received and unjust enrichment." (Def.'s Mot. to Dismiss 10).

Plaintiff does not challenge that the May 13 letter was faxed from defendant to the office of her counsel. According to plaintiff, however, this does not undermine the viability of her claim under the FDCPA. Plaintiff contends that, "[a]s the Supreme Court held in <u>Heintz v. Jenkins</u>, [514 U.S. 291 (1995)], there is no exception to liability under the FDCPA for debtors who are represented by counsel." (Pl.'s Response 8). Plaintiff relies upon caselaw from the

Fourth and Seventh Circuits in support, and distinguishes the cases cited by defendant. In particular, plaintiff notes that "[t]here is a difference between to whom a communication is sent, and to whom it is directed. [Defendant] may have sent the reinstatement demand to [plaintiff's] counsel, but the demand was directed to [plaintiff] because she was the person who had to make payment. The intent of the FDCPA is that [plaintiff] receive an accurate and honest statement of the amount of her arrears, and that intent was not met." (Pl.'s Response 19). Furthermore, plaintiff contends that application of a "competent lawyer" standard to evaluate the communication would be "contrary to established Third Circuit precedent," as "the only standard the Third Circuit has ever applied to measure the falsity or deceptiveness of a debt collector's communications is the least sophisticated consumer test." (Pl.'s Response 20) (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)). And, "[e]ven if a different standard applies to communications sent to a debtor's attorney, . . . a reasonably competent lawyer would still have been deceived by [defendant's] demand and misled into believing that [plaintiff] had to pay $10,578.58 to get her house out of foreclosure." (Pl.'s Response 21).

### III. Jurisdiction and Standard of Review

The Court's jurisdiction over plaintiff's FDCPA claim arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and over plaintiff's state-law claims under 28 U.S.C. § 1367.

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded allegations and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). As noted above, "[i]n evaluating a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the

7

plaintiff's claims are based upon those documents." Ogbin v. Fein, Such, Kahn & Shepard, PC, Civ. A. No. 08-4138, 2009 WL 1587896, at *1 (D.N.J. June 1, 2009) (Cavanaugh, J.) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 555 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

## IV. Analysis

### A. *FDCPA Claim*

According to defendant, plaintiff's FDCPA claim must be dismissed because the communication at issue—the letter faxed from defendant to Salvin's office—does not provide an actionable basis for such a claim. As the parties recognize, the United States Court of Appeals for the Third Circuit has not yet spoken to whether communications between debt collectors and debtors' attorneys are actionable under the FDCPA, and there is not consensus among the other

8

circuits that have addressed the issue. As plaintiff points out, the Fourth Circuit, in Sayyed v. Wolpoff & Abramson, 485 F.3d 226 (4th Cir. 2007), rejected the argument "that FDCPA liability cannot attach to communications made by a debt collection attorney to a debtor's counsel, rather than to the debtor." Id. at 232. The court found that the plain language of the statute made this clear, and "[i]f the statute left any room for doubt about this issue, Heintz[3] resolved it." Id. at 233. The Seventh Circuit, in Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769 (7th Cir. 2007), likewise rejected a district court's conclusion "that communications with a consumer's lawyer are beyond the reach of the [FDCPA]," id. at 777, and set forth a "competent lawyer" standard for evaluating such communications:

> Since . . . most lawyers who represent consumers in debt-collection cases are knowledgeable about the law and practices of debt collection, since those who are not should be able to inform themselves sufficiently to be able to represent their consumer clients competently, and since the debt collector cannot be expected to know how knowledgeable a particular consumer's lawyer is, we conclude that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.

Id. at 774–75.

As defendant notes, however, other circuits have indicated that communications between debt collectors and debtors' attorneys are not actionable under the FDCPA. In Guerrero v. RJM Acquisitions LLC, 499 F.3d 926 (9th Cir. 2007), the Ninth Circuit held "that communications directed solely to a debtor's attorney are not actionable under the [FDCPA]."

---

[3]In Heintz v. Jenkins, 514 U.S. 291 (1995), the plaintiff, a debtor who defaulted on a loan, brought suit under the FDCPA against the defendant, an attorney representing the lender in the state-court suit to recover the balance due. The plaintiff's claims arose from a letter that the defendant sent to the plaintiff's attorney as part of an effort to settle the state-court suit, regarding the amount she owed under the loan agreement. The question presented to the Court was "whether the term 'debt collector' in the [FDCPA] applies to a lawyer who 'regularly,' through litigation, tries to collect consumer debts." Id. at 292. The Court held that it should.

Id. at 934; see id. at 936 ("[C]ommunications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the [FDCPA]." (footnote omitted)); see also id. at 941 (The FDCPA was not "intended as a sword to be brandished by debtors who have retained counsel—the very debtors least in need of the Act's protections."). And in Kropelnicki v. Siegel, 290 F.3d 118 (2d Cir. 2002), the Second Circuit noted in dicta that "[a] review of the FDCPA's purpose, as explained both in the statute and in the legislative history, and this Court's treatment of the FDCPA in other cases leads us to believe that alleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA." Id. at 127; see also Schaffhauser v. Citibank (S.D.) N.A., 340 F. App'x 128, 131 n.7 (3d Cir. 2009) (nonprecedential) (citing Kropelnicki for the proposition that "there is a serious question whether communications between attorneys are subject to the FDCPA"); Richmond v. Higgins, 435 F.3d 825, 828 n.4 (8th Cir. 2006) (citing Kropelnicki and collecting district-court cases indicating that the FDCPA does not apply to communications with debtors' attorneys).

When confronted with this issue, other district courts in the Third Circuit have favored the approach taken in Guerrero and Kropelnicki. For instance, in Duraney v. Washington Mutual Bank F.A., Civ. A. No. 07-13, 2008 WL 4204821 (W.D. Pa. Sept. 11, 2008) (Cercone, J.), the plaintiff, a debtor, brought suit against multiple parties for violations of the FDCPA related to a mortgage foreclosure action brought against her; among the defendants were two attorneys (Diskin and Smith) who represented the foreclosing bank in the foreclosure litigation. In addressing the FDCPA claims against these attorneys, the court reviewed the "split of authority on the issue of whether communications with a debtor's attorney are

actionable under the FDCPA" and found "the reasoning of the courts in Guerrero and Kropelnicki more persuasive than that of the court in Sayyed." Id. at *14. "Moreover," the court noted, "even applying the Seventh Circuit's ['competent lawyer'] approach, [the plaintiff] has not even argued, much less demonstrated, that her lawyer was likely to be deceived by the communications he received." Id. The court concluded that "[t]he claims against Diskin all arise out of communications between Diskin and [the plaintiff's attorney], and are therefore barred from being further pursued in this case. The same is true with respect to Smith's . . . letter, which was sent to [the plaintiff's attorney, who] has not even attempted to argue that this letter was deceptive to him." Id.

In Marshall v. Portfolio Recovery Associates, Inc., 646 F. Supp. 2d 770 (E.D. Pa. 2009) (O'Neill, J.), the plaintiff, who was the attorney for a debtor, received a phone call from the defendant, a debt collector, regarding the debtor. According to the plaintiff, this call was "harassing, annoying and illegal" under the FDCPA. Id. at 772 (quotation marks omitted). The court, adopting the reasoning of Duraney, found "that communications between debt-collectors and consumers' attorneys are not subject to the 'least sophisticated consumer' standard of the FDCPA. . . . The majority of courts have held that communications between debt-collectors and consumer's attorneys are not subject to the FDCPA and [the plaintiff] fails to state a claim under this rule because the alleged conduct is not a violation of the FDCPA." Id. at 775. The court also noted that "[e]ven under the . . . 'competent attorney' standard, [the plaintiff] fails to state a claim on which relief can be granted." Id.; see also Ogbin, 2009 WL 1587896, at *4 ("[Defendant] sent two letters to Plaintiffs' counsel in the course of the foreclosure litigation. Even if we assume that these letters provided incorrect information,

Plaintiffs were represented by counsel who were more than capable of addressing and having corrected any incorrect information. Given that the communications at issue were sent to Plaintiffs' attorneys, Plaintiffs have failed to state a FDCPA claim upon which relief can be granted.").

The Court finds Duraney and Marshall persuasive in adopting the rationale of Guerrero and Kropelnicki, and concludes that, under this rationale, plaintiff does not have an actionable claim under the FDCPA in this case. The communication in question was faxed only to the office of plaintiff's counsel; plaintiff does not claim to have received it through any other channel. The letter was not addressed to plaintiff, nor it did contain any threat to contact plaintiff directly. See Guerrero, 499 F.3d at 936. Plaintiff attempts to distinguish Guerrero and Kropelnicki on the ground that, in each case, "the alleged misrepresentation was directed solely to the attorney, with no indication that it was ever communicated to the debtor client." (Pl.'s Response 19). In those cases, however, the Court also sees no indication that the alleged misrepresentation was not communicated to the debtor client after being received by the attorney,[4] or that this fact would bear on whether a debtor's FDCPA claim is actionable. As the Second Circuit in Kropelnicki explained, "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the

---

[4]The letter at issue in Guerrero, for instance, included information one might expect to be of interest to and shared with the debtor, such as the amount owed and the status of the debt verification, and also included a return envelope, seemingly for any payment that may be made on the debt. See Guerrero, 499 F.3d at 941–42 (Fletcher, J., dissenting). Similarly, one of the communications found to be not actionable in Duraney was a letter sent by the defendant to the debtor's attorney in response to that attorney's "request for information regarding the amount necessary to resolve matters"; the letter stated the amount owed and indicated that the defendant should be contacted before payment is made. Duraney, 2008 WL 4204821, at *6.

12

FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." 290 F.3d at 128; see Guerrero, 499 F.3d at 939 (quoting Kropelnicki and noting that "[w]hen an individual is represented by counsel who fields all communications relevant to the debt collection, these concerns [about the intimidation of unsophisticated consumers and disruption of their lives] quickly evaporate. Attorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not."). The Court fails to see how this reasoning would no longer apply when, as here, a debtor's attorney receives and shares with the debtor a communication from a debt collector that is of interest to the debtor. Accordingly, the Court disagrees with plaintiff's suggestion that, because the letter faxed to Salvin's office was shared with plaintiff and contained information directly relevant to her, it is not the sort of communication contemplated by Guerrero and Kropelnicki.

Even if we were to reject the rationale of this line of cases and apply the Seventh Circuit's "competent lawyer" standard,[5] plaintiff's claim would fare no better. The Seventh Circuit in Evory noted that there may be circumstances where false representations in communications with a consumer's attorney are actionable:

---

[5]Plaintiff asserts that adoption of the "competent lawyer" standard would contravene Third Circuit precedent, and suggests that a "least sophisticated debtor" standard should control instead. Plaintiff premises this contention on Brown v. Card Service Center, 464 F.3d 450 (3d Cir. 2006), which held that "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Id. at 454. As that language indicates, however, Brown did not address communications between a debt collector and a consumer's attorney, but rather "lender-debtor communications." The Court agrees with the Seventh Circuit that an "'unsophisticated consumer' standpoint is inappropriate for judging communications with lawyers," Evory, 505 F.3d at 774, and sees nothing in Brown to indicate that using a "competent lawyer" standard rather than a "least sophisticated consumer" standard to analyze communications with a consumer's attorney would be inappropriate.

> A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer.

505 F.3d at 775. The present case, however, does not present such a circumstance. The Reinstatement Figure provided by defendant clearly itemized the different fees and costs the Figure comprised. In this case, a competent lawyer would only need to familiarize himself with the status of the foreclosure proceedings being brought against plaintiff to recognize, as plaintiff's counsel readily did, that the Figure included charges inconsistent with that status. Accordingly, the Court concludes that, under either the rationale of Guerrero and Kropelnicki, or the "competent lawyer" standard of Evory, plaintiff's FDCPA claim is not actionable.[6]

### B. *State-Law Claims*

Given the Court's disposition of plaintiff's claim under the FDCPA, it declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims for Money Had and Received and for Unjust Enrichment / Accounting / Disgorgement / Restitution. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1866 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

---

[6]In light of this analysis, the Court will not address defendant's contention that the "safe harbor" language inserted at the bottom of each page of its letter also provides ground for dismissing plaintiff's claim.

## V.     Conclusion

For the foregoing reasons, defendant's Motion to Dismiss (Doc. 4) will be GRANTED.[7]  An appropriate order follows.

O:\CIVIL 09-10\09-3538 Wright v Phelan Hallinan & Schmieg\09-3538 Wright v Phelan Motion to Dismiss -- memorandum.wpd

---

[7]The Court notes that it is not granting leave to amend the Complaint because it sees no alternative ground for recovery in this case.